### THE STATE *vs.* MAHLON B. FOSTER.

*Construction of Statute—Embezzlement—Agency—Intent.*

1.  Where one person authorizes another as agent to do a single thing for a particular purpose, such an agency is within the meaning and operation of the statute of this State, entitled "An act concerning embezzlement and defalcation of corporate officers and others," passed at Dover, March 28, 1879.

2.  It is incumbent on the State to prove the agency, and to do that, it must show not only that the alleged principal gave the authority claimed, but also that the agent agreed to execute that authority and perform the duty.

3.  Embezzlement is where one fraudulently appropriates the property of another intrusted to his care, or fraudulently misapplies it, instead of applying it to its proper purpose; and it is necessary for the State to prove that the property actually came into the custody of the defendant, and while being so in his custody as agent he embezzled or fraudulently misapplied it.

4.  It is not necessary for the State to prove the embezzlement or fraudulent misapplication of the entire amount alleged.

5.  In this offence the intent to defraud, that is, the bad faith, is necessary to be shown before the defendant can be found guilty. A mere detention of the money by the defendant for a time might not warrant the inference that he misapplied it, or that he applied it to its own use fraudulently. Such detention might be consistent with the theory of innocence. It might be from an honest claim of right and not from a dishonest pretense.

6.  The fraudulent intent may be proved either by direct evidence or by the evidence of circumstances from which the fraudulent intent may be inferred,

*(May 20, 1898.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*R. C. White*, Attorney-General, for the State.

*Herbert H. Ward* for the defendant.

Court of General Sessions, New Castle County, May Term, 1898.

The defendant was indicted for embezzlement. The facts and contentions of counsel appear in the charge of the Court.

At the trial, after the witness, William H. Wickersham, had testified that he had received from the defendant the note of Margaret H. Wells, the prosecuting witness, for $240, and had paid the defendant the amount of the same—less the discount— in goods and cash, and that he looked to the prosecuting witness to pay the note, he was asked by the Attorney-General "what Mr. Foster's standing and ability was at that time?"

Question objected to by counsel for defendant as irrelevant. Objection sustained.

After the State had rested, defendant's counsel moved the Court to instruct the jury to bring in a verdict of not guilty, contending that under the statute (Revised Code 1893, p. 942, Chapter 153, Volume 16, Laws of Delaware), under which the indictment was found the only class of persons enumerated who could be guilty of embezzlement were clerks and agents. That it was not contended in this case by the State that the defendant was the clerk of the prosecuting witness, but that the State based its case upon the counts in the indictment charging that he did this as her agent. That Foster, the defendant, was not the agent of Mrs. Wells for the securing of the money on the note. That if by some broad reach of language he might be considered to be an agent in some capacity, yet, that beyond all peradventure he was not the agent under the evidence within the meaning of the statute.

The motion was based upon the language of the statute. Authorities showing how the Court construed statutes of somewhat similar phraseology to the one under which the indictment was found were cited, as follows:

*6 A. & E. Ency of Law, 471, 472, 474; Rex vs. Prince, 2 Carr., and Payne, *517; Johnson vs. State, 9 Baxter (Tenn.) 279; Regina vs. Cosser 13 Cox's Crown Cases, 187; Commonwealth vs. Libbey, 52 Mass., 64; 2 Bishop's Criminal Law, Secs. 333 and 376.*

By the very words of the statute the agency is limited to a particular sort of agency, viz: the agency of a person who is in the regular employ of some corporation or individual, and

therefore the statute did not apply, under the facts of the case. It was limited to such employment as a servant or clerk or cashier would be engaged in. The second clause narrowed the obligation of the statute, and might cover a person taking the place of a regular cashier, etc. The latter phrase might include the earlier. The common, colloquial use of the word employer means a person who has another in his employ to do certain things in a regular and successive way. Under this statute the words cashier, servant, agent or clerk must mean some person who has a master or employer, and those words certainly could not be wider than their colloquial use. But in this particular statute, and in their association here they must have even a narrower meaning and they must refer to masters or employers having agents, cashiers, servants or clerks regularly employed. Under the evidence in the case the defendant took the note with the understanding that he had the privilege of turning it in his business. It was a business arrangement made between Ramsberger and the defendant and was carried out by the defendant, except in the one particular that all the cash was not paid to the prosecuting witness, Mrs. Wells, and what was not returned he owed to her, but being a business arrangement such as business men might make, the defendant could not be guilty of embezzlement, he having a property right in the proceeds of the note, being an endorser thereon. Therefore upon the words of the statute, under the evidence, the defendant could not be construed by the Court to have been the agent of Mrs. Wells, but was simply liable for an accounting for the amount of money which he failed to turn over.

It was a mere friendly act of accommodation on the part of the defendant in arranging for discounting the note, but was not in the regular line of his business, and when he used it in his business, having the right to mix it with his funds, and having mixed it with his funds in accordance with his express authority received from Ramsberger, the agent of the prosecuting witness, he afterwards owed Mrs. Wells the balance that was coming to her out of that note, and it was nothing more than a debt, contracted possibly under circumstances which would be considered a breach of trust, but not such a breach of trust as is forbidden

by the statute, and it was therefore denied that the defendant had been guilty of embezzlement under the provisions of the statute.

(It was agreed between the respective counsel that the defendant had the note discounted for a compensation.)

MR. WHITE:—Under the evidence there was a breach of the confidence and trust imposed in the defendant by the prosecuting witness.  Therefore the object and intent of the statute being to punish all breaches of trust, it must be conclued that this statute includes all breaches of trust.  The note was not made payable to Foster by Mrs. Wells for the purpose of security or to aid her in raising the money, but in order to make the necessary parties to the note so that it might be discounted at a bank.  The defendant had no property in the note at all.  He was not a servant, but a broker or an agent who was to perform an act for Mrs. Wells involving confidence and trust.  The statute says, "employed in the *capacity* of an agent."  So that he need not have been a regularly employed agent, but only employed in the *capacity* of an agent, acting as an agent in a particular case.

*Commonwealth vs. Foster, 107 Mass., 221; Commonwealth vs. Butterick, 100 Mass., 1.*

GRUBB, J:—The Court are unanimously of the opinion that we cannot direct this jury to find a verdict of not guilty at this stage of the case, and that you will therefore have to go on and present your defense to the jury.  We will, of course, pass upon these questions involved in this case when we come to charge the jury.

The defendant's counsel excepted.

The Court charged the jury upon the various propositions of law raised by the prayers of the respective counsel, as follows:

GRUBB, J., charging the jury:

Gentlemen of the jury : — Mahlon B. Foster stands charged in this indictment upon three counts—two only of which

the State relies upon. In the first count it is charged that he received, as the agent of Mrs. Margaret H. Wells, money belonging to the said Margaret H. Wells, and afterwards, having it in his custody as her agent, unlawfully embezzled it.

In the second count the defendant is charged with obtaining the money of the prosecuting witness, Mrs. Margaret H. Wells, while acting as her agent, and with fraudulently and unlawfully misapplying this money, while still in his custody as her agent.

This indictment has been found under the statute of the State, entitled "An act concerning embezzlement and defalcation by corporate officers and others," passed at Dover, March 28, 1879, the provisions of which, relating to this charge, are as follows: "That every cashier, servant, agent, or clerk to any person or to any body corporate, or being employed for the purpose, or in the capacity of a cashier, servant, agent or clerk by any person or body corporate, who shall embezzle, fraudulently abstract, or misapply any money, goods, bill, note, bond, check evidence of debt, or other valuable security, or effects, which, or any part whereof, shall be delivered to, or received, or taken into possession by him, or to which he has access for, or in the name, or on account of his master, or employer, although such money, goods, bill, note, bond, check, evidence of debt, or other valuable security, or effects, was not received into the possession of such master, or employer, otherwise than by the actual possession of his cashier, servant, agent, clerk or other person so employed, shall be deemed guilty of a misdemeanor, and shall, on conviction thereof," etc.

Under this indictment, the State contends that Margaret H. Wells, through Harry Ramsberger, created the defendant, Mahlon B. Foster, her agent, to receive from her her note payable to him and to collect that note for her and to pay the proceeds to her promptly—that is the contention of the State. And the State further contends that Mahlon B. Foster did receive that note from Mrs. Wells, through Ramsberger, that he, Foster, endorsed that note as the payee of it, and that he transferred that note to William H. Wickersham, who was a witness in this case, for a valuable consideration, which was mentioned to you;

and that Mahlon B. Foster, the defendant, actually received from Wickersham the proceeds of the note in the mode that was testified by Wickersham and others in the case. The State further contends (of course I am not stating these as facts, but only the contentions, and it is for you to find whether or not what the State contends is true on all the evidence, as it will also be for you to find whether or not what the defense contends is true on all the evidence, being the "questions of fact in issue" under our new Constitution); I say the State further contends that although Mahlon B. Foster actually transferred, by his endorsement and delivery, the note of Mrs. Wells to Wickersham, and it passed entirely out of the control of Foster, and Wickersham gave him valuable consideration for it, partly in money and partly in the other ways that were stated to you from the stand, and that, notwithstanding the note passed out of the hands of Foster into the hands of Wickersham, and that he actually received the proceeds from it—money in part—yet that instead of conveying or delivering to Mrs. Wells the proceeds of that note which he actually received from Wickersham he fraudulently converted them to his own use; that he unlawfully embezzled them and unlawfully and fraudulently misapplied them. That is, instead of applying them to the use and for the benefit of Mrs. Wells he applied them to his own use and for his own benefit—a part, at least, of the money, if not all.

In support of the contention of the Attorney-General it is incumbent upon him, in behalf of the State, to show you, first, that Foster, the defendant, was created the agent of Mrs. Wells for the purpose contended for by the State. In order to prove that agency he must show you not only that the alleged principal gave the authority claimed, but also that the agent agreed to execute that authority and perform the duty; because no one can make an agent of another without the consent of the person who is to be the agent. It is for you, upon all the evidence, to determine, first whether Mrs. Wells, through Ramsberger, conveyed authority for the purpose claimed by the State; secondly, whether Foster was informed by either Ramsberger or Mrs. Wells of the purpose and of the authority which she desired, and

expected, to be conferred upon him; and if he did receive it, whether he accepted that authority or not, and undertook to discharge it—that is, whether he became not a general agent for her but a special agent for a particular transaction and did this particular thing and whatever was necessary to its accomplishment.

The counsel for the defense has claimed that an agency, for the purpose which the State claims, does not come within the meaning and operation of this statute against embezzlement, etc., which I have read to you. The learned counsel for the defense seems to consider that this statute applies to an agent in the more general sense and not to an agent for this particular kind of transaction and particular purpose, and that therefore we ought to say so to you and instruct you that such an agency is not within the meaning and operation of this law, and hence that you cannot find him guilty but should render a verdict of not guilty.

We are not able to say that you should find a verdict of not guilty on that ground of defense, because it is the opinion of this Court that one person may create another an agent to do a single thing for a particular purpose, and that such an agency is within the meaning, contemplation and operation of this act. Such an agency therefore being within the meaning and operation of this act, in our judgment, the question still remains, whether the agency for this particular purpose has been proven to your satisfaction beyond a reasonable doubt.

An agency may be proved in express language, written or oral, by direct evidence; or it may be proved by indirect evidence, that is, by what we call circumstantial evidence, the evidence of circumstances, such as the relations of the parties to each other, their language, actions, conduct and other circumstances in reference to the particular transaction in question, from which evidence of their relations, language, manner, conduct, acts, etc., you the jury may reasonably infer that an agency for the particular purpose claimed really existed, with the authority on the one side of the alleged principal and the assent on the other of the alleged agent.

In this case, was there any agency at all proven? That is, was it proven that Foster was created Mrs. Wells' agent, with his assent, for a purpose. If you think, upon all the evidence, that he was an agent for some purpose, then for what purpose? That is the question. There is where the contention begins. The State, as I say, contends that he was her agent and took her note and endorsed it as the payee of it, and after having taken it and endorsed it was to dispose of it for her benefit and use and not for his own benefit and use. Was that or not the exact purpose of the authority given and the duty incurred by Foster by his assent? It is for you to say. We cannot decide as to the credibility of the respective witnesses. We cannot charge you ·as to what effect you should give to the testimony. For there is testimony on both sides upon that question and it is for you to decide what was the agency.

On the other side, the defense has contended. that he was not to take that note and put it in bank, say for discount, and collect the money that way and immediately pay it over, but that he was to dispose of that note in the line of his business—turn it in his business as they contend—and in that way make the proceeds of that note. And one, at least, of their witnesses, Foster himself, has said, (if you find it so) that when he got it he was to pay it over at his convenience. That is the other contention. You are to weigh that and decide upon all the evidence in the case, between the witnesses, which it was. If you should find, for instance, that the contention of the prosecution is correct, that the defendant was to raise the money on that note and when actually raised, when the note was actually disposed of, he was to pay it to her, as soon as reasonably convenient and practicable, then the State will have to go further, than merely to prove such an agency. They will have to prove first that the money actually came into his custody, the proceeds of that note, and secondly, that while being so in his custody as agent he embezzled or fraudulently misapplied it. Embezzlement is where one fraudulently appropriates the property of another, intrusted to his care, or fraudulently misapplies it, instead of applying it to its proper purpose; that is, in this instance, to her use and for her benefit.

.You are to be satisfied, therefore, that he actually received money as the proceeds of that note. You have to go further and find that he misapplied it unlawfully and frauduently, or that he embezzled it ; that is, fraudulently appropriated it to his use and did not apply it or appropriate it to Mrs. Wells' use and for her benefit.

A mere detention of the money by the defendant for a time might not warrant you in drawing the inference that he detained it or that he misapplied it, or that he appropriated it to his own use, fraudulently. Mere detention might be consistent with some other theory, some theory of his innocence. For instance, if he detained the money on a claim of right which he believed in, in good faith, and not a dishonest pretense, then that might be an innocent detention and he might not be inferred to be guilty of fraudulently misapplying it or fraudulently appropriating it to his own use. Because in this offense the intent to defraud, that is, the bad faith, is necessary to be shown before you can find him guilty of embezzling the money or fraudulently misapplying it.

The fraudulent intent, the intent to defraud the owner of it, may be proven to your satisfaction beyond a reasonable doubt, either by direct evidence or by the evidence of circumstances showing a fraudulent intent in a man's mind, from which you may infer that fraudulent intent. The question for you is whether in this case there have been circumstances shown to you in connection with this transaction, in view of all the testimony, which warrant you in inferring that he did fraudulently appropriate this money or fraudulently misapply it. That is, with the fraudulent purpose of appropriating it to his own use and not to the use and benefit of Mrs. Wells. You have heard all of those circumstances.

On the part of the defense it has been claimed, that as Mrs. Wells, made the note payable to Foster's order and he had to endorse it in order to dispose of it to anybody else for value, to collect it, that thereby he became liable as an endorser. In law, if he endorsed it and it passed into the hands of Wickersham and passed from him into a bank or into any other third party's

hands, Mr. Foster was liable, on his endorsement, to pay that note if Mrs. Wells, the maker, did not. That is the law. The defendant claims through his counsel that that being the situation, that he had endorsed it in order to collect it for Mrs. Wells, by his agreement—and for a consideration, as is the contention of both sides—then he was liable on that endorsement; and, being liable on the endorsement, (that is the contention, I mean, of the defense; I am not saying it is a fact) that, after paying part of the money, he did not pay over the balance because, being an endorser on the paper and having loaned his credit, he learned at some time, as they contend, that there was a doubt about the solvency of Mrs. Wells and her ability to pay the note which was then still unpaid by her. If you should believe that Foster, in view of his being endorser on that note and liable to pay it if she did not, and in view of his having learned before any money on the note was actually received and actually embezzled or fraudulently misapplied by him (if you should find from the evidence that it was ever fraudulently misapplied by Foster), that is, before the offense was complete and the guilt fixed, actually believed that she was insolvent and that was his honest reason for holding back any balance that he might have, then that would be a defense for holding back that amount of money. But if, from the evidence, you find that he, Foster, had actually completed the offense and his guilt was fixed, the crime complete, before he the defendant had learned of the probable inability of Mrs. Wells to pay the note upon which Foster would have been liable to a suit and judgment against him, then it would not be a defense.

There is another claim of an honest reason (if he did keep any money back) why he did so. That is, that he was liable as an endorser and had learned that she was probably insolvent, and that so learning he offered to return that note if she would return to him the money he had paid her. That is the contention of the defense. We must say to you in regard to that, as we have in regard to the other contention, that if he did learn before the alleged crime was complete that she was probably insolvent and he would probably have to pay the note, and upon that knowledge, before the alleged offense was actually committed,

he did offer to return it, as soon as was reasonably practicable, that would be a defense. But if he had embezzled it or fraudulently misapplied it and the crime was complete before he learned that she was probably insolvent and that he would probably have to pay it on his endorsement, or be liable to, you could not find him not guilty as to that. Because when a person has actually committed a crime the State has its claim upon him for the protection of others besides the party against whom the crime has been committed, and the defendant cannot deprive the State of its right to prosecute and punish him for the purpose of the prevention of crime in the future. So that the alleged knowledge depends upon whether it was before or after he had actually committed the crime, if you believe he did actually commit the crime.

The counsel for the defense has asked us to charge you that if you believe from the evidence that the defendant had a right, under the agreement under which he took Mrs. Wells' note, to mingle the proceeds of that note with his own funds or in his own business, that the liability of the defendant for the proceeds of the note became simply a liability to account to Mrs. Wells for the money received by him payable to her out of said note, and that there must be a verdict of not guilty, as to the part of the money, if any, that he mingled. That is one of the contentions of the defendant, as I have said, in regard to the agency. It brings us back to the question of what was the agency, and what was the purpose of it and what was the exact thing that Foster was authorized to do and that he undertook and agreed to do. As I said before, counsel for the defendant contends that Foster was not to raise the money on the note immediately and pay it immediately over to Mrs. Wells, but that he was to use the note, and the proceeds of it in his business and without any definite term or limit to that. If you believe that that was the terms of the agency conferred upon him by her, through Ramsberger, and that he agreed to act as her agent and that she had given authority for him to do that as agent in this transaction of course you can find it so, if you believe that to be true upon all the evidence in the case ; and if you should find it so, you would have to render a verdict of not guilty ; because in

that instance he would not have used this money with intent to defraud, which is essential to sustain this charge. It is for you to say whether you believe, under all the facts, that that was what he was to do—put the note in his business, run it in the course of his business and collect it in the course of his business, and use it for his own benefit, or not. It is for you to say, whether that was probable and reasonable to believe in view of all the circumstances in the case.

We have but one other thing to say to you, and that is that it is incumbent upon the State to prove every necessary ingredient of this offense, everything essential to sustain the charge to your satisfaction beyond a reasonable doubt; not a speculative, fanciful, whimsical doubt, but a reasonable doubt, such as men of ordinary intelligence and impartiality would feel to exist in view of all the evidence; and if the State has not so proved every essential ingredient of this offense to your satisfaction beyond a reasonable doubt, then you will be bound to find a verdict of not guilty. But if the State has proved the case which it claims it has presented to you, beyond a reasonable doubt, then it will be your duty to find the prisoner guilty on one or more of these counts of this indictment. It is alleged in one count that he embezzled $130, and in the other that he fraudulently misapplied $130. It is not necessary for the State to prove the entire amount. If it is proved that he embezzled any part of these proceeds, the money which he received, or that he fraudulently misapplied the whole or any part of it, that would be sufficient for you to find a verdict of guilty upon, in case you are satisfied of it beyond a reasonable doubt.

*A Juror:*—May I ask a question?

GRUBB, J:—Yes.

*A Juror:*—This note for $240.00 was protested, and paid by Mrs. Wells. Has it been brought out during the trial whether the preliminary suit in the magistrate's office was entered before or after the payment of this note of Mrs. Wells?

GRUBB, J:—It is for you to say whether there is evidence that that was paid or not at that time. You must recollect the evidence, if you can.

SPRUANCE, J:—Your question is not for us to answer. All the facts you are the judges of. We will tell you about the law, but what you inquire about is a matter of fact.

Counsel for defendant noted a general exception to the charge of the Court.

(After the jury had retired they were brought into the Court room for further instructions.)

GRUBB, J:—Gentlemen of the jury, you have sent to the Court this communication, which I will read to you.

You ask: "Because Mr. Foster had been offered $40 commission on the note instead of his asking $40, would that relieve him of his responsibility as an agent?"

We say to you, as a matter of law that that circumstance would not relieve him of his responsibility as an agent. In other words, we say no to your question.

You can retire to your jury room again.

An exception was noted, for the defendant, to the above instruction of the Court.

Verdict: Guilty, with a recommendation to the mercy of the Court.